# Exhibit 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
Lexington Division

| | |
|---|---|
| VAPOR TECHNOLOGY ASSOCIATION, et al.<br><br>Plaintiffs,<br><br>v.<br><br>U.S. FOOD AND DRUG ADMINISTRATION, et al.<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 5:19-cv-00330-KKC<br>)<br>)<br>)<br>)<br>) |

## SUPPLEMENTAL DECLARATION OF STACEY M. BENSON, Ph.D.

I, Stacey M. Benson, Ph. D., do hereby declare as follows:

1. I am over the age of 18 years and have personal knowledge of the facts set forth below such that I would be competent to testify as to the same if called.

2. I am an epidemiologist with over 15 years of professional experience conducting, analyzing, and interpreting scientific data using well-accepted scientific methodology. Epidemiology relies on human research to assess the relationship between exposures to a substance or product and the resulting human health impacts.

3. My areas of expertise include environmental epidemiology, occupational epidemiology, respiratory protection, and clinical research. I received my undergraduate degree (B.S.) in physics from St. Lawrence University, my master's degree (M.S.) in the field of exercise physiology from the University of Pittsburgh, and my Ph.D. in Epidemiology from the University of Pittsburgh. I have held teaching positions at Carnegie Mellon University and Point Park University and served an Associate Service Fellow at the National Institute for Occupational Safety and Health, where I conducted human subject experiments at the National Personal Protective Technology Laboratory. I have published over 30 scientific articles, presented 28 papers

1

at both national and international conferences, and have been cited in the scientific literature over 400 times.

4. I currently serve as a Managing Health Scientist and Epidemiology Practice Area Lead at Cardno ChemRisk, a global scientific consulting firm specializing in, among other areas, product health and safety. Cardno ChemRisk is a consulting firm that provides scientific advice to the government, corporations, law firms, and various scientific and professional organizations.

5. Cardno ChemRisk has been providing consulting services to electronic nicotine delivery systems (ENDS) clients for over five years and is currently supporting clients in their efforts to comply with the Premarket Tobacco Application (PMTA) process. As such, we, and I in particular, are familiar with the PMTA procedures as they stand today, as well as the many challenges and uncertainties facing vapor product manufacturers that are attempting to satisfy the recommendations for PMTAs set forth by the Food and Drug Administration (FDA).

6. On August 28, 2019, I signed a declaration (my "Original Declaration") that I understand was filed by the Plaintiffs in the above-captioned case in support of their motion for a preliminary injunction.

7. On September 25, 2019, FDA published a proposed rule in the Federal Register entitled *Premarket Tobacco Applications and Recordkeeping Requirements* (the "PMTA Proposed Rule"). A true and correct copy of that proposed rule is attached hereto as Exhibit 1. The Proposed Rule, which is some 93 pages long, purports to "set forth the requirements for premarket tobacco product applications" for all tobacco products, including vapor products.

8. I have reviewed the Proposed Rule with a particular focus on whether it provides further clarity or guidance regarding any of the significant scientific and methodological issues and questions relating to the submission of PMTAs for vapor products that I set out in my Original

2

Declaration, including the concerns that I discussed in paragraphs 11 through 16 thereof and paragraph 20 thereof. These concerns include, *inter alia*, good manufacturing practices requirements, bridging studies across vapor products, methodologies for aerosol testing of devices and e-liquids, and the complete list of harmful and particularly harmful constituents (HPHCs) for which the vapor product's aerosol must be tested. With the exception of providing additional detail on the requirements for environmental assessments, the Proposed Rule fails to address the scientific and methodologic concerns I previously enumerated. The Proposed Rule also fails to address in any way the significant practical concerns arising from the technological limitations associated with available lab equipment's limits of detection for certain HPHCs, the lack of validated methodologies to support the detection of certain HPHCs at levels relevant to the general population, the significant constraints on available lab space prior to the May 11, 2020 deadline for both clinical and non-clinical testing, the timing issues surrounding shelf life and stability testing, the amount of time it takes to conduct and complete proper clinical vaping topography and pharmacokinetic studies, or the requirement for nationally representative behavioral studies.

9. In short, other than as regards environmental assessments, the Proposed Rule provides no further clarity on any of the other very significant practical concerns that constrain the ability of vapor product manufacturers to submit robust PMTAs prior to the May 11, 2020 deadline, yet the Proposed Rule also gives no indication that FDA will be willing to accept anything less than a "complete" PMTA by that date.

10. The publication of the Proposed Rule thus does nothing to affect my earlier conclusion that requiring applicants who waited for the publication of the Final ENDS PMTA Guidance in June 2019 (or even the publication of the Proposed Rule in September) to now complete PMTAs by May 11, 2020, is not realistic. Further clarity from FDA on the PMTA

requirements in the areas that I noted in my Original Declaration and then an appropriate period of time for manufacturers to execute the necessary studies and prepare their PMTAs is instead required.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 7, 2019

Stacey M. Benson, Ph. D.

References

US Food and Drug Administration. Premarket Tobacco Product Applications and Recordkeeping Requirements. 84 Federal Register 50566. September 25, 2019. https://www.govinfo.gov/content/pkg/FR-2019-09-25/pdf/2019-20315.pdf